636

ESTATE OF FRANKLIN W. M. CUTCHEON, LYMAN RHOADES, ROBERT MUNRO FERGUSON AND JOHN B. MARSH, AS TRUSTEES AND TRANSFEREES, PETITIONERS, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ESTATE OF FRANKLIN W. M. CUTCHEON, SARAH F. CUTCHEON, TRANSFEREE, PETITIONER, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 110324, 110325.   Promulgated April 17, 1944.

*Carter T. Louthan, Esq.*, for the petitioners.
*Conway Kitchen, Esq.*, for the respondent.

OPINION.

OPPER, *Judge*: These are estate tax proceedings. A deficiency in the amount of $96,512.44 was determined against the respective petitioners as transferees of the estate of decedent, Franklin W. M. Cutcheon, resulting from the inclusion in the gross estate of the entire corpus of four trusts created by him during his lifetime. The estate tax return was filed with the collector for the first district of New York.

The stipulated facts are hereby found. They show that decedent, who died on November 12, 1936, created in April 1919 four trusts, of each of which he named himself and two others trustees. Under the first, decedent's wife was the life income beneficiary. Under the other three, she was the remainderman, upon her survival of the respective income beneficiaries. In all four, decedent's wife was given a testamentary power of appointment, in default of which the principal was to pass to her next of kin. Decedent retained no power of revocation, but gave the trustees the power "in their absolute discretion" to "pay over to or otherwise apply to the use of" the respective life tenants "all or any part of * * * the principal of said trust estate" upon request. As permitted by the indenture, decedent resigned as trustee of all of the trusts in December 1919 and a substitute trustee was appointed. On December 9, 1925, one of the other trustees having resigned, the two who remained appointed decedent to fill the vacant place—a position which he retained until his death.

Respondent insists that these facts present a case for the application of section 302 (d) in the form in which it appeared subsequent to the amendment embodied in section 805 (a), Revenue Act of 1936,

on the ground that decedent's transfer "was subject at the date of his death to any change through the exercise of a power (in whatever capacity exercisable) by the decedent alone or by the decedent in conjunction with any other person (without regard to when or from what source the decedent acquired such power), to alter, amend, revoke, or terminate." The parenthetical language and the word "terminate" were added by the amendment.

Subsection (b) of section 805 limits the application of the amendment embodied in subsection (a) to "transfers made after the date of the enactment of this act" unless the property in question "was includible under such section before its amendment." *White* v. *Poor*, 296 U. S. 98, is clear authority that situations to which its doctrine is applicable were not previously covered by the section. The amendment can, accordingly, affect them only where the transfer was subsequent to its enactment.

In fact, there is respectable evidence that the amendment was itself an effort to overcome the effect of the *White* decision. Report No. 2818, Committee on Ways and Means, 74th Cong., 2d sess., p. 9. That case dealt with a trust for decedent's children of which decedent had constituted herself one of three trustees, with a provision that successor trustees might be appointed "by the surviving trustees" if "approved by the then living children * * *. In 1920 the settlor resigned as trustee and a daughter was appointed to fill the vacancy. After serving for one year she resigned, and * * * [decedent] was appointed * * * and continued as a trustee until her death." The similarity to the present facts must be manifest. In the language of the committee report:

* * * The Court held that the power to terminate existing in the decedent at the date of her death resulted from the action of the other trustees and not by virtue of any power reserved to herself as settlor in the original estate. * * * It is, therefore, provided that section 302 (d) covers a power whether created at the time of transfer or thereafter arising from any source and whether exercisable in an individual or representative capacity. To some extent, it is believed this amendment is declaratory of existing law. To the extent that it is not so declaratory, it is prospective and will apply to transfers made after the date of enactment of the act. * * *

See *Mellon* v. *Driscoll* (C. C. A., 3d Cir.), 117 Fed. (2d) 477; certiorari denied, 313 U. S. 579.

It is scarcely open to doubt that an amendment which directly conflicts with the application of existing law as announced by the highest court would be, to say the least, ineptly characterized as "declaratory of existing law." But only that part of the legislation [1]

---

[1] Technically, the report dealt with a House Bill (H. R. 12793) which was never adopted. Instead, the provision which ultimately became section 805 was introduced on the floor of the Senate and concurred in by the House with inconsequential amendments. Conference Report No. 3068, 74th Cong., 2d Sess., p. 19. The applicability of the legislative history of H. R. 12793 does not appear to have been questioned. See *Mellon* v. *Driscoll, supra;* 1 Paul on Federal Estate and Gift Taxation, 301.

is said to be retroactive which can be so described. As applied to facts which meticulously fit the Committee's description of the Supreme Court's decision, the single permissible conclusion is that to that "extent * * * it is not so declaratory" and, consequently, "will apply to transfers made after the date of enactment of the act."

Such an interpretation indeed is the effect of any fair reading of respondent's own regulation which declares that the phrase " 'without regard to when or from what source the decedent acquired such power' is not considered declaratory of the meaning of the subdivision prior to the amendment in a case in which no one of the powers enumerated in the subdivision was reserved," an expression subsequently defined to mean "a power which, having been reserved when the transfer was made, continued to the date of decedent's death." Regulation 80, art. 20 (a), (b) (3). See *Welch* v. *Terhune* (C. C. A., 1st Cir.), 126 Fed. (2d) 695, 698; certiorari denied, 317 U. S. 644.

The conclusions to be drawn thus appear to be that the facts bring the present proceedings squarely within the principle of *White* v. *Poor;* the 1936 amendment disaffirming the doctrine of that case was prospective only and had no application to transfers made, as these were, prior to its enactment; and accordingly the respondent erred in including the trust property in decedent's estate.

Other questions do not call for discussion upon that disposition of the principal issue.

*Decisions will be entered under Rule 50.*